McKinney, J.,
delivered the opinion of the Court.
This was an action of debt1 brought by Neiffer, as holder of a paper purporting to be a check or draft for $3,000, drawn by the Bank of Knoxville on H. W. Conner of Charleston, South Carolina, payable to D. L. Bronson. The check was made payable thirty days from date, and acceptance Avas waived by an endorsement on its face. No funds were plaeed in the hands of the drawee to meet the payment of the check, and it was protested for non-payment.
Under the instructions of the Court, the jury found a verdict' for the defendant, upon which the Court rendered judgment.
The “Bank of Knoxville” is one of the free banks organized under the act of 1851—2. At the date of the check sued on, .M. W. Williams was president, and John L. Moses cashier of said bank. The check was drawn and signed by the president in his official character. This fact constitutes the principal ground of defence — it being assumed that the president had no authority to draw a check, and consequently the act is not binding on the bank.
The charter of the bank—the act of 1851-2—is silent upon this subject; and there is no by-law or regulation of the bank assigning the duty of drawing bills or checks to any particular officer of the bank. The objection to the power of the president to bind the bank, therefore, rests upon the general principle that, in the absence of any positive regulation to the contrary, the cashier is the executive officer, through whom all the moneyed operations of the bank are to be conducted
*164 It is admitted to be true, as a general proposition, that where the charter of incorporation prescribes the particular mode in which its contracts shall be made or authenticated, that mode must be pursued; for corporations, like natural persons, are in general bound only by the acts and contracts of their agents within the scope of their authority. And all restrictions upon the power of the agents or officers contained in the charter, every one dealing with the corporation is bound to notice. But if no definite rule is to be found, either in the charter or by-laws of the institution, in regard to the manner and form in which its acts and contracts shall be evidenced, then, it seems, general usage, and the course of business of similar institutions, is to govern; the officers will be presumed to have been invested' with the customary authority, and their acts within the scope of such usage, practise, and course of business will be binding on the institution, in favor of third persons having no knowledge t©’ the contrary.
There can be no doubt, however, that, notwithstanding a bank, or other corporation, may be authorized to contract in a prescribed mode, either by its charter, or by-laws, or general usage, it may depart from the prescribed mode, and render itself liable upon contracts executed or authenticated in a different mode. Thus, although the president of a bank be not authorized, by virtue of his office, to draw checks for [the moneys of the bank, it is clear that the company may empower him, as its agent, in a particular instance, or generally, to do so; and that, in such case, the bank will be bound by the act. Corporations, in this respect, stand upon the same footing with natural persons, and are [alike *165 bound by the acts of its agent beyond the limits of his authority, if done by their previous or subsequent assent, or express or implied direction.
The proof in this record establishes, that, by the general usage of banks in Tennessee, the cashier is the executive officer of the bank, and the proper person to draw and sign checks, but that, in the absence of the cashier, the practice is for the president to draw and sign checks, &c., without any special authority for that purpose. And the proof further establishes, that the practice in this particular bank, from its first organization, had been for the president to draw checks in the absence of the cashier.
It is admitted that the cashier was absent at the time the check sued on was drawn; but it is said that, during his absence, another person had been temporarily appointed to act as cashier in his stead. This assertion is not proved by anything in the record before us; but if it were established, it would not vary the question. It is sufficient to vest the president with authority to do the aet, that the regular, permanent officer, known as cashier, is absent from the bank, at the time the official act is required to be performed. And, in the absence of any positive prohibition upon the exercise of such a power by the president in the charter of incorporation, it is difficult to perceive any very sensible reason why such a power might not as well be exercised by the one officer as the other, so far as regards the binding effect of the act upon the bank. The objection is a highly technical one, and it will not do to permit corporations, especially banks, to escape their just liablities on such unsubstantial and flimsy pretexts.
*166 Upon this point Ms honor, the Circuit Judge, erred in Ms instructions to the jury.
The decision of the foregoing question disposes of the objection to the notice of protest. And, as 'the case must go back for another trial, we forbear to notice the question of fraud made on the trial. It will be left open, without any intimation upon the facts.
Judgment reversed.